is to avoid repetition. I am not. I'm not going to repeat. What I wanted to do in Tate is point out some of the nuances between the cases. That would be helpful. Yes. In Hall we really focused on the reserve power issue. With regard to the firefighters there are some factual nuances which are different. There was no discovery in Van Houten but we got really through self-directed discovery, meaning the public records. Just for the record I should say that we're now, we've called the case of Tate v. City of Fort Worth and the argument now relates solely to the Tate case. I just should say that. Thank you. There is no need unless the court has continuing questions about Article 66 to address it here. And whatever argument I made in the prior case would be deemed adopted here with the court's permission. I actually do have one question. I'm happy to, that's why I'm here. I don't understand why your Bill of Rights argument under Texas Constitution is a separate argument. Why aren't you just bundling the Texas Constitutional issues together and saying that 66 can't mean that it's not a contract because the other part you have to read them together and so it is a contract just like Alaska. I don't understand. They're both constitutional provisions and why aren't we reading the Constitution together in Texas and so it becomes like Alaska in Hawaii if you say that's where that provision says that you can't impair and it's a contract. So it's not a separate fallback like the U.S. Constitution argument. It's part of how you define that. I can't answer that for you. The reason it hasn't been argued to date is because there was no opportunity. No, but when you argued 66 you could have said we don't just look at this in the abstract. We look at the Texas Constitution. We do and I believe we do. Because it is the Constitution. Correct and I think this is the important distinction and there is a case from another jurisdiction that helps make the distinction. Most of the states, Texas being one of them, has its own impairment of contract provision. Texas has it. I think there are three or four states that don't but they have judicially created it and there are also nine states, Texas being one of them, that took pains to have an extra constitutional provision just about pensions and the Supreme Court of Arizona in fields which we did cite to you in the brief and I do not remember the case citation but it had to do with the judicial retirement system in Arizona and it said the reason that you have a separate pension provision as well as a general impairment of contract provision is the pension one is supposed to mean something more and that's why we argued fields to you. Be careful because if you say that the other one, that's saying the other provision doesn't have much meaning and I think you want to have the Bill of Rights have teeth. No, and if I gave you that impression, Judge Elrod, I certainly didn't mean to. What fields said, and we had the privilege to participate in that case as a friend of the court, but what fields was about is it said every state has an impairment provision. For example, Texas has always said that pensions of contract, at least since 1928, has said pensions of contract. So it's about Tramlin and the doctrine espoused therein. What Section 66 was intended to do, and there's one Texas court, an unreported decision from the Court of Appeals in Waco that cites the Attorney General's opinion and without discussing it, it does say it was intended to change the rule in Tramlin. So to that extent, that's the best jurisprudence that we have on the subject and I hope I've answered Your Honor's question. So you're going to tell us the differences now between Tate and Hall and Van Houten? Houten, yes. Here's the differences. The police officers in Van Houten asked the Pension Board if they could, this is all on the record, asked the Pension Board if they could vote about raising their contribution. The Pension Board authorized the vote, the city said you can't do that, and we never got around to the question of whether the police officers are willing to pay more. In Tate, there's a very important factual issue, which is that during the collective bargaining, and we discussed this at page 6 of our initial brief and it's at pages 1202 and 1203 of the record, the firefighters offered to increase their own employee contribution, because everybody puts money into this thing, by more than 50%. And that's significant because an enrolled actuary, which is who determines the cost of pensions, provided an affidavit which said if the city had taken the money from the firefighters, it would have actually been making more money, it would have had more money going into the plan than what the accrued benefit or benefit accrued reduction saved. In other words, the firefighters offered to put up more money than what the city wanted to cut from benefits. So clearly this had nothing to do with money. This was a political argument, I think, as I go on here. And that's why the jurisprudence about impairment of contract says a government can always find more use for money, it can find more politically expedient ways to use money, more popular ways, but that doesn't excuse a government from impairing its contract. And a government can only impair its contract, as our founding fathers talked about, and as the jurisprudence of this court talks about, when it is reasonable and necessary to preserve the public welfare. And we never got that opportunity. The only evidence in the record, and there was 588 pages of financial information in the Tate record that points to the fact that the city, in the worst economic time since the Depression, had a growing financial base, that the firefighters offered to put in more money than what the city wanted to save, and that the city touted to the bond market, the financial markets, that things are great. And that's a significant issue. It's a significant record issue. It would be true for the police as well, except that the opportunity to develop that record was never presented. There's also an issue with regard to the effect of the COLA, which is that the firefighter voted in the irrevocable election for an ad hoc COLA. What the ad hoc COLA meant, it was a gain sharing. If the plan earned above a certain number and got to a certain funding ratio, depending on how much money was in the plan, they could get anywhere from 0 to 4%. The city said, even though we had an irrevocable election some years ago, we're going to undo that, and we're going to have another irrevocable election, but instead we're going to give you a 2% flat COLA. Now, one might argue that a guarantee of 2 is better than the chance to get 4, but the ability for the ad hoc COLA to take effect was predicated almost entirely on the number of people who voted for it, and that the irrevocable election would have yielded a COLA, and that because in the economic records of the plan are in this record that show that it had outstanding economic years in 12, 13, and 14, which would have yielded a better COLA than what the 2% COLA is going to yield. What is your response to the argument that you really don't have a controversy in the election? I mean, the employee's not forced to take a reduction. He has an opportunity to choose between what you're proposing now is new and what was old. Is that their argument? The argument is that the effect of reopening the election— What is their argument? I'm sorry? What is their argument, as you understand? Their argument is that the ad hoc COLA was draining the bucket of money. They said it was bad plan design, it was costing too much money, and to paraphrase their brief, every time the plan got above 80%, the retirees got a cost of living adjustment, and then it went below 80%. I thought their argument is that the employee has a choice. It's not required. They did say— I thought that's the argument. I'm sorry. I didn't mean to interrupt you. Go ahead. Did I— No, sir. Please, please, please. Thank you. Is that their argument? Their argument is that, besides the leaky bucket argument, which I think is a phrase right out of their brief, they said, but anyway, we gave them a choice. But by giving them a choice, the retirement decisions that firefighters had made was undone, because by offering a significant number of people switched to the 2% fixed, and because of now the small number of people left, that the effect of the 2%, you have to pre-fund that, and that lowered the plan's funded ratio. So they'll make less money? Less than what they could have made? In the 2%? Does it affect the amount of their return? It could. But does it affect the amount of the plan's return? Or the members? The members' return. Yes, it does. Because— In a negative way. In a negative way. How? How? It affects it in this way. In order for this group of folks to get the zero to four—to get the four. It's got to be better than two. To get a three or a four, the plan had to be funded at a certain level. And the fund gets funded at a certain level due to a number of things—investment return, other actuarial factors, which could be how long people live and when they quit, and all the—I don't need to give you an actuarial lesson. But the point being that there are economics which affect it. But when you take a COLA that was dependent solely on earnings, and now you make it a fixed benefit of the plan, it has to be booked as a liability looking forward to infinity. So now the funded ratio of the plan drops because it has a new liability on the books. But you have to show that it would have had a better return. And that's why summary judgment shouldn't have been granted. But is there evidence that you would have had a better return? I believe that there is evidence in the record. But remember, there was no opportunity to do so. We put in actuarial evidence that showed the effect. I think for one officer, for one firefighter, the effect was minus 57,000. For another one, it was minus 114,000. The factors and the record citations are in the brief, and I would rely on those. And it was attested to by an actuary. Judge McBride said, that's just a conclusory. And in the day and a half, that's what he said. But what he did, is he resolved factual inferences created by the response to the motion for summary judgment against the non-moving party. And there was no opportunity to test the validity of that, or any other factor in this case. What do we do if we agreed with you on that part of the case? How does that play out? I guess you'd vacate it and send it back to the trial court for a factual determination. I know of no other way to do it, or to find, that based on the record that you have before you, that there's no other conclusion that one could reach that it was wrong. And that it impaired benefits accrued. Does that pretty much finish your argument, Mr. Klausen? Do you have something else you want to say? Yes. I'd like to save a little bit of rebuttal just to tell you exactly what I'd like you to do at the end of the case. Okay. Thank you. Ms. Ault, we'll hear from you again. Because Judge Means and Judge McBride rightly held that the city's ordinance amendments comply with Section 66D, the rest of the appellant's claims fail as a matter of law. Whether or not there was an alleged . . . Are we talking about Tate, or are we talking generally? I'm talking generally. And Tate and Van Houten and both. Both courts, it was a determination that the ordinances and their amendments comply with the Constitution. So all of the arguments that you made with respect to Houten apply to Tate? Correct. Do all of the arguments you are making with respect to Tate apply to Houten? Essentially, Your Honor. There are some differences in the briefing, as Mr. Klausen pointed out. All along, we believed that these cases should have been consolidated. Our motion was denied. But it's essentially the same issues that are before the court. And certainly with respect to the city's perspective on all of this, what's good for one is good for all. So even if somebody got $55,000 less, it doesn't matter because they were allowed to do that. Is that what you're saying? Correct. What we're allowed to do, what the city is allowed to do, is what the Constitution provides. And our bifurcated calculation in response to the Attorney General opinion that said there are other ways to get at this, even for vested employees. What you did with the 2007 amendment doesn't get you there, but you can address this unfunded liability, even for vested employees. That's what we've done in creating that bifurcated calculation that gives full effect to benefits accrued to the date of the change and then looks at future benefits and calculates those under a different method. The two are then added together that would determine the ultimate pension for that employee, completely consistent with the Texas Constitution. And there's no way to bring in other constitutional provisions from other states, even the federal Constitution or other provisions within the Texas Constitution, to come to any other result. That is the proper result, looking at this specific provision, 60-60, that was designed to do exactly what it has now done. We are not reneging on a promise. We are calculating benefits accrued under the formula in place up until the date of the change. Then the Constitution allows us to make changes going forward. What about the fact, just on the COLA, if they had previously chosen the other method, obviously, and then that part doesn't pay out as much because there's not enough money in the fund? It's a previous choice, and it was vested, so why isn't that an impairment of that part of the contract? The COLA is something that is added at the end as a cost-of-living adjustment upward. As a practical matter, the fact that everyone opted out of it would suggest that changing it was not a reduction or impairment, if there were that many people that were interested in getting out of it. Put that aside. This is not subsequent unilateral legislative action that the city took to reduce or impair a benefit. This is an option that was created with the intent of allowing the members a better situation. Right, but what if, as a result, the people who stick with the old do worse? There's no way to know that is the other practical problem for that judgment. Is there summary judgment evidence in the record of that? There was evidence that was presented, but that evidence is only relevant if the court has not properly ruled that these questions are decided as a matter of law. That's the reason that Judge McBride didn't need to get into the detail of that. He determined that the amendments, both for the defined benefits calculation and for the COLA, were consistent with the Constitution. As a matter of law, he ruled that. All of this evidence that there was just the discussion about only is significant if you have determined that there was some sort of impairment. And here, as a matter of law, there was the determination that there was not any impairment. Right, but I'm trying to pick apart to see if, on that part, is there an impairment because of the prior statement that you wanted to elect that? You know, you're picking in the other method before. Is there an impairment as to that part? As a matter of law, no. We did not impair, and that is the distinction, perhaps, that we're drawing. You're asking is there an impairment. I'm saying are we responsible for an impairment? No. Why? Because the Constitution, all it does is prohibit us from taking this subsequent unilateral legislative action that reduces or impairs benefits accrued by these people who would be able to recover that without any more service going forward. I mean, that's essentially what the provision means. In giving an election— If it didn't give a choice, would that be an impairment if it just said you're all moving into this other method of COLA? Even if it helps the people because it pays out more and everybody likes it, is it still a— At that point, perhaps it would be— It would be a unilateral— Well, okay. With respect to going forward, everyone would agree that looking forward with respect to going back to a 2% fixed COLA for future benefits, that is no impairment. We're talking about for current employees who had chosen the ad hoc COLA, giving them the option, let them take responsibility for what they wanted to do, hoping that that would help some of them recover something when they had been recovering nothing under the ad hoc COLA for those years of service. Had we done something different, we would have to look at that perhaps differently. We did not require any action. We said this is purely up to you, and that is why I say as a matter of law that cannot constitute a reduction or impairment of accrued benefits under the Constitution, and that is why both Judge Means and Judge McBride legitimately came to the conclusion that the ordinances, whether it's in the Van Houten case or it's in the Tate case, both comply with Section 66D and that there was no need then to get into whatever evidence may have affected different persons' benefits, the numbers of those benefits and everything else because as a matter of law, we had not impaired anyone's rights. Is there something else that you need to say? You tell me, Your Honor. If there is anything else that we need to discuss on certification, I kind of hit on that briefly. Certainly we would agree both with you, Judge Jolly, and with you, Judge Elrod, in terms of how you've characterized the fact that they got into federal court and now wish that they perhaps had done something different. We believe that this court is completely well-suited to answer all of these questions, and we would respectfully request that you affirm both of the summary judgments from Judge Means and Judge McBride. Do you agree that our precedent requires us to follow the attorney general opinion, assuming that it is not just outlandish? I do not believe that you have to follow the attorney general opinion, and in fact all along the appellants have said that it's entitled to deference. We disagree with that. You don't believe it gets deference under our case law? I do not. It's not a judicial determination, and in Texas, certainly not here, is there a reason to defer to it? I think that when you read it in its full context, giving effect to every bit of it, it does, in fact, come to . . . it helps us more than it helps them. Don't we have cases that say we have to give deference? I think looking at it as persuasive authority and deferring to it are two different things, and maybe I'm splitting hairs, but I don't think that you have to follow it, particularly when it dealt with a different amendment. Maybe it would be different if it dealt with these particular amendments. It does not. It was a very different situation, and in fact what the attorney general said in that 2008 opinion is what very much motivated the city to take the actions that it did going forward and in changing its approach in the 2012 and 2014 amendments so that we would have this bifurcated calculation that would not have the potential to run afoul of 66D like the earlier amendment that Fort Worth had considered had done. So there are several reasons you shouldn't defer, the least of which, frankly, is that it's just an AG opinion and it's not some judicial authority. The better reason not to defer to it is that it dealt with something entirely different than what we are dealing with in this particular case and as a result said things that don't have any application here, and it didn't really address the question of law that we're dealing with here. But if you take it apart, I think that the best statement of what the AG opinion stands for is that City of Fort Worth, you can do this, but you need to come at it in another way where vested employees are concerned, and that is exactly what we did in the 2012 and 2014 amendments by creating that bifurcated calculation. Okay. Thank you, Ms. Howell. Thank you. You have your argument, ma'am, I'm sure. Good arguments both sides. Very brief rebuttal. Well, I'll save that for your wind-up. I hope so. I hope I still get it at the end of the wind-up. You will. Thank you, sir. What I've been struggling with today and what I think the Court struggles with today is try to get a handle around what's a benefit accrued. I'll give you a good example. I go in the plan, it says I can retire when I'm 50, and I vest after five years, and now in 49 years, 11 months, 29 days, City Council passes an ordinance that says, it's not too bad, you've got to work to 52. Then when I get to 52, they pass one that says you get to 54. It becomes the legislative version of the legend of Tantalus. Every time I go to drink from the water, it recedes. I reach for the grapes, the tree picks up. That's an accrued benefit. The accrued benefit I vested in at five years was the right to say I stood in the line of fire until I was 50, and now I get to go. If they want to say the person that comes after me has to be 55, good. What you're really arguing is what's right and wrong and not what words mean. No, it's not right or wrong, Judge. It's what's legal. It's very wrong to put somebody in that position. I would agree with that. That's exactly why the electors... That doesn't answer the case. That's exactly why the electors of Texas adopted Section 66, and that's exactly why the U.S. Supreme Court and U.S. Trust said in looking at an impairment of contract, because remember, between two private parties, we have breaches of contract. The legislative power, the city's power to pass an ordinance and change the contract. Now they say we didn't breach the contract. There's a new contract. It can only be done when it is reasonable and necessary, and that analysis was never done. Section 66 would have enabled the court to avoid the federal question altogether and say under the Texas Constitution what they did was wrong. Win or lose on that? If I win on that, we're done. If I lose on that, you should still send both cases back to do a reasonable and necessary analysis under the very federal impairment test that we went to federal court for. Most contracts with government, because essentially if you rule against the firefighters and police officers in this case, you're really saying the government has the ability legislatively to change any contract it wants going forward, whether it's with their employees, whether it's with the bond market, whether it's with commercial vendors or builders or other people who provide services. It's like saying, well, you paved the street, but we passed an ordinance that says your contract's now less. That's exactly what happened here. These firefighters and police officers paved the street. They did their jobs, and now the city is changing the contract. And that's what is missing in that analysis from the lower court is the impairment analysis. Each judge only decided a state law question which would have avoided the federal question. And while we believe we are absolutely correct, and that will lead me to my final point about the AG, page 14 of the initial brief, 13 and 14, we have outlined the cases, and your jurisprudence in Neyland says we will give substantial attention to the chief legal officer of the state. And your case was cited with approval by the 11th Circuit in Brown v. The Alabama Department of Transportation that says the district court is not free to proceed as if a matter was utterly open to independent consideration. And I don't care how many times you hold that AG opinion up to the light and turn it around and take its pieces apart. It supports the argument of Ann Houghton and the argument of Tate. And now I'd like to respectfully ask the court to do the following. Number one, you should reverse both of them on the Section 66 issue. But if you decide that against us, or if you decide it's not worthy of certification, then you should vacate the judgments below and send them back for what both groups of plaintiffs asked for originally, and that is to have the city's change of what Texas has always called an employment contract since 1928 to have it analyzed according to a federal impairment analysis. And in vacating and sending it back, then justice gets done. And I thank the court for its conduct. You don't want a state impairment analysis. I'm sorry. You're not asking for a state impairment analysis. I apologize. That is in the brief as well, and I would ask that... It was federal just now. Well, you asked, didn't you choose a federal form? The answer is yes. Could the court also exercise supplemental jurisdiction over the Article I Section, I've drawn a blank, I think it's 3 or 6, of the Texas Constitution? The answer is yes. So for those reasons, we ask you to reverse. Thank you. Both good lawyers.  Thank you, sir.